United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| STEPHANIE WALLACE TRESH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 16-10809-NMG |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM & ORDER

GORTON, J.

Pro se plaintiff Stephanie Tresh ("plaintiff" or "Tresh") filed this action appealing the denial of her application for disability benefits against defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner"). This Court will treat plaintiff's letter to the Court (Docket No. 20) dated April 24, 2017, purporting to be a status report, as a motion to reverse the decision of the Commissioner. Also pending before the Court is defendant's motion to affirm. For the reasons that follow, the motion to reverse will be denied and the motion to affirm will be allowed.

I. Background

A. Employment History and Alleged Disability

Tresh was born in 1967 and resides in Massachusetts. After high school, Tresh worked as an accounting assistant, office

assistant and office manager full time while taking college courses at night. After earning her associate's degree in marketing and design, she worked as an intern web designer and later as a full time employee. After obtaining her bachelor's degree in business management, she worked as a web designer for six years.

Tresh explains that, in 2005, while she was pregnant with her second child, she began experiencing back pain. Eventually she was diagnosed as having a herniated disc. She was treated with steroid shots which made the pain more bearable but did not resolve her symptoms completely.

According to Tresh, in 2006 she was also diagnosed with rheumatoid arthritis ("RA") and, although it was treated, she still had daily joint pain. She was further found to suffer from fibromyalgia and Reynaud disease, apparently related to her RA.

After her second child was born, Tresh began experiencing migraine headaches which resulted in vomiting and sensitivity to light. Tresh explains that she went to emergency rooms for the migraines because intravenous medication was the only successful treatment. In 2011, she was hospitalized for complex migraines.

Plaintiff asserts that, because of her health problems and her caretaking responsibilities for two young children, she quit her employment. She has allegedly tried several treatment

regimens for her various ailments with only moderate or intermittent success.

   B.   **Procedural Background**

   In December, 2012, plaintiff filed an application for Social Security disability insurance ("SSDI") benefits under Title II of the Social Security Act in which she alleges that she became disabled in November, 2007 because of the ailments described above.  In February, 2013, the Social Security Administration ("SSA") denied her claim and the following August her claim was again denied after reconsideration.

   Plaintiff filed a request for a hearing in October, 2013. A hearing was held before Administrative Law Judge Eric Eklund ("the ALJ").  Plaintiff was represented by counsel.  An impartial vocational expert also testified at the hearing.  The ALJ found that plaintiff was not disabled as defined by the Social Security Act ("the Act"). 42 U.S.C. § 405(g).  Plaintiff timely filed a request for review with the Appeals Council. That request was denied in November, 2015, rendering the ALJ's determination a final decision subject to judicial review. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 25 (1st Cir.1986).

   Plaintiff filed her complaint with this Court in April, 2016.  The Commissioner filed a motion to dismiss for lack of prosecution in April, 2017.  Plaintiff's status report filed in

June, 2017, referred to above, is treated as a motion to reverse the Commissioner's decision. The Commissioner filed a motion to affirm in July, 2017. Both motions are the subject of this memorandum.

## II. Social Security Disability Insurance Appeal

### A. Legal Standard

The Act gives United States District Courts ("District Courts") the power to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

**B. Application**

Tresh submits that the decision to deny her benefits is contradicted by medical and mental health experts. She contends that her many ailments qualify her for SSDI and that the ALJ must have had inadequate information when he reviewed her files. For those reasons, Tresh asserts that the decision of the Commissioner to deny her SSDI should be reversed.

The Commissioner responds that the ALJ's decision should be affirmed because his findings are based upon evidence in the record. The Commissioner asserts that credibility determinations by the ALJ are entitled to deference and a vocational expert's testimony constitutes substantial evidence.

**1. The ALJ's Findings**

As a threshold matter, the ALJ determined that Tresh last met the insured status requirement of the Act on December 31, 2012 which establishes her Date Last Insured ("DLI"). See 42 U.S.C. § 416(i). The ALJ then applied the five-step test promulgated by the SSA to determine if a claimant is disabled and entitled to benefits under the Act. 42 U.S.C. § 1381a. The test evaluates 1) whether the claimant is engaged in a "substantial gainful activity", 2) whether she has a severe impairment, 3) if there is a severe impairment, whether it is equivalent to impairments identified in the regulation, 4) whether the claimant's residual functional capacity is adequate

for her previous work and, if not, 5) whether there are other jobs in the economy to which the claimant could adjust. 20 C.F.R. § 404.1520(a); see also Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982).

At Step One, the ALJ found that Tresh was not engaged in substantial gainful activity from the date of alleged onset of the impairments through the DLI.

### a. Tresh's Impairments

Applying Step Two, the ALJ found that Tresh had the severe impairments of rheumatoid arthritis, degenerative disc disease, hypertension and migraine headaches. He also found that Tresh had several non-severe impairments. For instance, in June, 2012, plaintiff fractured her foot but that has since healed. She was also diagnosed with fibromyalgia but the ALJ found it to be medically non-determinable because of a lack of evidence. Tresh has a history of depression and seasonal affective disorder but the ALJ determined that those impairments are mild restrictions on daily living and have not persisted for an extended period of time. The ALJ gave little weight to the opinions of psychological consultants, who considered the mental impairments to be moderate, because he found them inconsistent with the record and lacking evidentiary support.

At Step Three, the ALJ considered whether Tresh had an impairment (or combination of impairments) that met or was

equivalent to the impairments identified in 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Degenerative disc disorder was the only one of Tresh's impairments listed in the C.F.R. and the ALJ determined that the symptoms associated with that disorder were not severe enough to constitute the degenerative disc disorder described therein.

### b. Determining Tresh's Residual Functional Capacity

Before proceeding to Step Four, the ALJ determined Tresh's residual functional capacity ("RFC").  He found that, prior to the DLI, she had the ability to perform light work with certain postural, exertional, manipulative and environmental limitations.  The ALJ found that Tresh's impairments could reasonably be expected to cause her alleged symptoms but that her statements regarding the intensity, persistence and limiting effect of her symptoms were not entirely credible.  The ALJ supported his calculation of Tresh's RFC with detailed findings.

With respect to her neck and back pains, the ALJ found that there was medical evidence which indicates a reasonable expectation of the symptoms described.  That evidence also indicates, however, that Tresh had full range of motion with only mild tenderness, that steroidal injections had relieved some symptoms for several years and that Tresh had complained of only mild lower back pain within the year preceding her DLI.

Nevertheless, the ALJ included postural and environmental limitations in Tresh's RFC to account for those symptoms.

Tresh also states that she experienced pain, tenderness and swelling from RA in her right hand. The record indicates, however, that treatment had substantially relieved those symptoms. The ALJ found that Tresh was able to control those impairments and did not experience significant functional deficits. Yet, to account for those issues, he included manipulative limitations in her RFC.

Finally, Tresh alleges that the migraine headaches rendered her disabled. The ALJ made extensive use of the record in finding that Tresh had periods of substantial symptoms from migraines. Again, however, the ALJ found that 1) those symptoms were treatable 2) Tresh did not seek significant treatment during the six months preceding her DLI and 3) the migraines occurred no more than once a month and lasted no longer than one hour. Still, the ALJ included environmental limitations in the determination of Tresh's RFC to account for the migraines.

The ALJ considered the opinion evidence from medical consultants but gave those opinions little weight. The experts did not find that Tresh was suffering from a disability under the Act but the ALJ concluded that neither doctor appropriately considered the effects of Tresh's rheumatoid arthritis. Accordingly, the ALJ determined that Tresh's RFC should include

more manipulative limitations than the medical consultants provided.

### c. Ability to Perform Work

Having considered the medical record and determined Tresh's RFC, the ALJ completed Steps Four and Five and made findings with respect to appropriate potential employment for Tresh prior to her DLI. After the vocational expert was informed of Tresh's RFC, he was of the opinion that she was capable of performing her past relevant work as a network development specialist or a webmaster. That ability alone would be sufficient to support a finding that Tresh was "not disabled" under Step Four the Act. See 20 C.F.R. § 404.1520(a)(iv). The ALJ continued to Step Five, however, and found that Tresh was also able to perform the requirements for three other jobs in the national and regional economy, as a printed circuit board assembler, cashier or package sorter.

After completing the five-step process and describing in detail the reasoning behind each step, the ALJ found that Tresh was not disabled, as defined by the Act, at any time from the date of alleged onset through the DLI.

### C. Conclusion

In reviewing the ALJ's decision, this Court is limited to determining only whether there was substantial evidence in the record, Lizotte, 654 F.2d at 128, and whether the ALJ applied

the correct legal standard to support the finding. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 2 (1st Cir. 1987). This Court finds that there is substantial evidence in the record to support the Commissioner's determination that Tresh is not entitled to disability benefits and the ALJ correctly applied the five-step test in making that determination.

## ORDER

In accordance with the foregoing, plaintiff's motion to reverse the decision of the Commissioner (Docket No. 20) is **DENIED** and defendant's motion to affirm the decision of the Commissioner (Docket No. 24) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 9, 2017